PAID

JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
THERESA E. VITALE (SBN 333993)
tvitale@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Relator*

| FILED |
| :---: |
| **CLERK, U.S. DISTRICT COURT** |
| APR 27 2022 |
| **CENTRAL DISTRICT OF CALIFORNIA** |
| BY: _____ EEE _____ DEPUTY |

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

[UNDER SEAL].,

              Plaintiffs,

        v.

[UNDER SEAL],

              Defendants.

CASE NO. LACV22-2798-ODW(JCx)

**COMPLAINT FOR**

1. **Submission of a False Claim**
   **31 U.S.C. § 3729(a)(1)(A);**

2. **Making False Statement in Support**
   **of a Claim**
   **31 U.S.C. § 3729(a)(1)(B)**

3. **Conspiracy to Violate the False Claims Act**
   **31 U.S.C. § 3729(a)(1)(C)**

4. **Improper Retention of Money Owed to the Government**
   **31 U.S.C. § 3729(a)(1)(G)**

**<u>DEMAND FOR JURY TRIAL</u>**

**[FILED IN CAMERA AND UNDER SEAL
PURSUANT TO 31 U.S.C. §
3730(b)(2)]**

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**

1  JUSTIN T. BERGER (SBN 250346)
   jberger@cpmlegal.com
2  THERESA E. VITALE (SBN 333993)
   tvitale@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
4  840 Malcolm Road
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
6  Facsimile: (650) 697-0577

7  *Attorneys for Relator*

           **UNITED STATES DISTRICT COURT**

8          **CENTRAL DISTRICT OF CALIFORNIA**

9  UNTIED STATES OF AMERICA *ex rel.*     CASE NO.
   ASHWANI CHAWLA.,
10                                         **COMPLAINT FOR**
              Plaintiffs,
11                                            1. **Submission of a False Claim**
        v.                                       **31 U.S.C. § 3729(a)(1)(A);**
12
   AGATHOS SUPPORT SERVICE, INC., a       2. **Making False Statement in**
13 California Corporation; WILLIAM           **Support**
   NELSON, an individual; VICKI             **of a Claim**
14 ROLLINS, an individual; CENTURY          **31 U.S.C. § 3729(a)(1)(B)**
   VILLA INC dba CENTURY VILLA, a
15 California Corporation; TORRANCE       3. **Conspiracy to Violate the False**
   CARE CENTER WEST INC dba                 **Claims Act**
16 TORRANCE CARE CENTER WEST, a             **31 U.S.C. § 3729(a)(1)(C)**
   California Corporation; LONG BEACH
17 CARE CENTER INC dba LONG BEACH       4. **Improper Retention of Money**
   CARE CENTER, a California               **Owed to the Government**
18 Corporation; FLOWER VILLA INC dba      **31 U.S.C. § 3729(a)(1)(G)**
   FLOWER VILLA, a California
19 Corporation; GLENDORA GRAND INC
   dba GLENDORA GRAND, a California
20 Corporation; CENTINELA GRAND INC
   dba CENTINELA GRAND, a California
21 Corporation; PACIFIC VILLA INC dba        **DEMAND FOR JURY TRIAL**
   PACIFIC VILLA, a California
22 Corporation; VILLA DEL RIO CENTER
   INC dba DEL RIO CONVALESCENT
23 CENTER, a California Corporation;       **[FILED IN CAMERA AND UNDER**
   VILLA DEL RIO GARDENS INC dba          **SEAL**
24 DEL RIO GARDENS CARE CENTER, a         **PURSUANT TO 31 U.S.C. §**
   California Corporation; and            **3730(b)(2)]**
25 ROLLINSNELSON GRP, LLC, a
   California Corporation,
26            Defendants.

27

28

LAW OFFICES
COTCHETT, PITRE &    **COMPLAINT**
McCARTHY, LLP

# <u>TABLE OF CONTENTS</u>

**Page No.**

I.    INTRODUCTION ..................................................................................... 1

II.   JURISDICTION AND VENUE.................................................................. 1

III.  PARTIES ................................................................................................... 2

IV.   THE FALSE CLAIMS ACT ...................................................................... 4

V.    THE CARES ACT AND PPP PROGRAM ................................................ 5

VI.   THE AGATHOS SUPPORT SERVICE, INC. DEFENDANTS DID NOT
      QUALIFY FOR THE LOANS................................................................... 9

      A.    Agathos Support Service, Inc. and its Affiliates Far Exceed the 500-
            Employee Cap and the Revenue Benchmarks............................................ 9

      B.    Agathos Support Service, Inc. and its Affiliates Submitted Fraudulent PPP
            Applications.............................................................................................. 12

      C.    The Agathos Support Service, Inc. Chain Had Significant Sources of
            Financial Assistance, and Otherwise Were Not in Need of PPP Loans. ............ 13

VII.  CAUSES OF ACTION ............................................................................. 15

      FIRST CAUSE OF ACTION Submission of a False Claim  31 U.S.C. §
      3729(a)(1)(A) ............................................................................................ 15

      SECOND CAUSE OF ACTION Making False Statement in Support of a Claim
      31 U.S.C. § 3729(a)(1)(B)......................................................................... 16

      THIRD CAUSE OF ACTION Conspiracy to Violate the False Claims Act  31
      U.S.C. § 3729(a)(1)(C)............................................................................. 17

      FOURTH CAUSE OF ACTION Improper Retention of Money Owed to the
      Government  31 U.S.C. § 3729(a)(1)(G) ................................................. 17

VIII. PRAYER FOR RELIEF ........................................................................... 18

## I.     INTRODUCTION

1.     The novel coronavirus has wrought devastation throughout our country. In response, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in March 2020.  The law was intended to provide emergency financial assistance to Americans suffering from the economic impact of the virus.

2.     One highly publicized portion of the aid was the Paycheck Protection Program ("PPP").  Congress initially authorized $349 billion in forgivable loans to small business, and then in April 2020 authorized more than $300 billion in additional funding for PPP.

3.     Relator Ashwani Chawla brings this lawsuit under the False Claims Act to redress the Agathos Support Service, Inc. Defendants' improper receipt and retention of PPP loans, as well as to hold the Agathos Support Service, Inc. Defendants liable for conspiring to obtain millions of dollars of taxpayer funds to which they were not entitled. As a result of the defendants' fraud conspiracy, they received PPP loans totaling $11,359,012.00

4.     Not a penny of these loans were necessary, and Defendants made false certifications of need and eligibility under the PPP program and the CARES Act.  These false statements were material in getting the loan approved.  These statements were objectively false and were knowingly so.  Only by making these false certifications and statements were the Defendants able to claim eligibility for the loan program and, most tantalizing, for eventual forgiveness of the loans.  In short, the loans were not needed and Defendants were not eligible yet resulted in millions of taxpayer dollars being directed to the Agathos Support Service, Inc. Defendants to earn interest and profit off the PPP program, all with the opportunity to have the principal and interest of those loans forgiven.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and 31 U.S.C. § 3732, the latter of which specifically confers

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                                                    1

1    jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730.

2        6.    This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C.

3    § 3732(a) because that section authorizes nationwide service of process and because

4    Defendants have minimum contacts with the United States.  Moreover, Defendants can

5    be found in and have transacted business in the Central District of California.

6        7.    Venue is proper in the Central District of California pursuant to 28 U.S.C.

7    §§ 1391(b) and 1395(a) and 31 U.S.C. § 3732(a) because Defendants can be found in

8    and/or transact or have transacted business in this district.  At all times relevant to this

9    Complaint, Defendants regularly conducted, and continue to conduct, substantial

10    business within this district and/or maintain employees and offices in this district.  The

11    events that gave rise to this action occurred in this district.

12    **III.    PARTIES**

13        8.    Relator ASHWANI CHAWLA files this action on behalf of the United

14    States pursuant to the False Claims Act.  Mr. Chawla is an original source of the

15    information contained herein.  Mr. Chawla is a licensed California CPA as well as a

16    licensed Nursing Home Administrator.  He has worked for several large healthcare and

17    healthcare consulting firms, such as Kellogg and Andelson, Zenith Health Care, and

18    Windsor Healthcare.  Mr. Chawla has extensive expertise in Medi-Cal cost reports and

19    worked as a government cost report auditor for two years.  Throughout his career, cost

20    report preparation, consulting and compliance has been his area of expertise.  At the time

21    of filing this lawsuit, the fact that the Agathos Support Service, Inc. Defendants were

22    ineligible for receiving a PPP loan was not publicly disclosed.

23        9.    Defendant AGATHOS SUPPORT SERVICE, INC. is a company that runs

24    healthcare services through various affiliates across California.  Its primary address is

25    4333 Torrance Blvd., Torrance, CA 90503.

26        10.    Through common ownership and control, Agathos Support Service, Inc. is

27    affiliated with 9 healthcare facilities and one healthcare management company that

28    provided long term care and assisted living services to its clients.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**COMPLAINT**                                                                    2

11.    Defendant William Nelson is the Chief Executive Officer of Agathos Support Service, Inc. and is on the governing board of each of the affiliated healthcare facilities listed below.

12.    Defendant Vicki Rollins serves as Director of Agathos Support Service, Inc. and is on the governing board of each of the affiliated healthcare facilities listed below.

13.    Defendant Century Villa Inc., which does business as Century Villa, is a Skilled Nursing Facility ("SNF") located at 301 N Centinela Ave, Inglewood, CA 90302.

14.    Defendant Torrance Care Center West Inc., which does business as Torrance Care Center West, is a Skilled Nursing Facility ("SNF") located at 4333 Torrance Blvd, Torrance, CA 90503.

15.    Defendant Long Beach Care Center Inc., which does business as Long Beach Care Center, is a Skilled Nursing Facility ("SNF") located at 2615 Grande Ave, Long Beach, CA 90815.

16.    Defendant Flower Villa Inc., which does business as Flower Villa, is a Skilled Nursing Facility ("SNF") located at 1480 La Cienega Blvd, Los Angeles, CA 90035.

17.    Defendant Glendora Grand Inc., which does business as Glendora Grand, is a Skilled Nursing Facility ("SNF") located at 805 Arrow Hwy, Glendora, CA 91740.

18.    Defendant Centinela Grand Inc., which does business as Centinela Grand, is a Skilled Nursing Facility ("SNF") located at 2225 N. Perris Blvd., Perris, CA 92571.

19.    Defendant Pacific Villa Inc., which does business as Pacific Villa, is a Skilled Nursing Facility ("SNF") located at 3501 Cedar Ave., Long Beach, CA 90807.

20.    Defendant Villa Del Rio Center Inc., which does business as Del Rio Convalescent Center, is a Skilled Nursing Facility ("SNF") located at 7002 Gage Ave., Bell Gardens, CA 90201.

21.    Defendant Villa Del Rio Gardens Inc., which does business as Del Rio

1    Gardens Care Center, is a Skilled Nursing Facility ("SNF") located at 7004 E. Gage
2    Ave., Bell Gardens, CA 90201.

3        22.    Defendant RollinsNelson Grp, LLC ("RollinsNelson"), also known as
4    RollinsNelson LTC Corp. and Rollins-Nelson Healthcare Management Company, Inc.,
5    is a healthcare management company located at 805 W. Arrow Highway, Glendora CA,
6    91740. RollinsNelson is owned and operated by Defendants William Nelson and Vicki
7    Rollins, who are the CEO and Director of Agathos Support Service, Inc. and on the
8    governing board of each of the Agathos affiliate SNFs. RollinsNelson previously
9    operated Agathos affiliate Torrance Care Center East, which was merged into Defendant
10   Torrance Care Center West Inc. in 2014.

11   **IV.    THE FALSE CLAIMS ACT**

12       23.    The federal False Claims Act (the "FCA" or "Act") was originally enacted
13   during the Civil War.  Congress substantially amended the Act in 1986 – and, again, in
14   2009 and 2010 – to enhance the ability of the United States Government to recover losses
15   sustained as a result of fraud against it.  The Act was amended after Congress found that
16   fraud in federal programs was pervasive and that the Act, which Congress characterized
17   as the primary tool for combating government fraud, was in need of modernization.
18   Congress intended that the amendments would create incentives for individuals with
19   knowledge of fraud against the Government to disclose the information without fear of
20   reprisals or Government inaction, and to encourage the private bar to commit legal
21   resources to prosecuting fraud on the Government's behalf.

22       24.    The FCA prohibits, inter alia: (a) knowingly presenting (or causing to be
23   presented) to the federal government a false or fraudulent claim for payment or approval;
24   (b) knowingly making or using, or causing to be made or used, a false or fraudulent
25   record or statement material to a false or fraudulent claim; (c) knowingly making, using,
26   or causing to be made or used, a false record or statement material to an obligation to
27   pay or transmit money or property to the Government, or knowingly concealing or
28   knowingly and improperly avoiding or decreasing an obligation to pay or transmit

money or property to the Government; and (d) conspiring to violate any of these sections of the FCA.  31 U.S.C. §§ 3729(a)(1)(A)-(C), and (G).  Any person who violates the FCA is liable for a civil penalty of thousands of dollars for each violation, plus three times the amount of the damages sustained by the United States.  31 U.S.C. § 3729(a)(1).

25.     The FCA allows any person having information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery.  The FCA requires that the Complaint be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the government time to conduct its own investigation and to determine whether to join the suit.

## V.     THE CARES ACT AND PPP PROGRAM

26.     The CARES Act was enacted in March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.  One piece of the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through the PPP.  In April 2020, Congress authorized over $300 billion in additional PPP funding.

27.     In order to obtain a PPP loan, a business had to qualify as a small business, and was required submit a PPP loan application.  The application is signed by an authorized representative of the business.  The application requires the business to acknowledge the program rules and make affirmative certifications to be eligible to obtain the PPP loan and receive funds.

///
///
///
///
///
///
///

28.   The certifications made by applying businesses in the application are below:

# Paycheck Protection Program
## Borrower Application Form

**By Signing Below, You Make the Following Representations, Authorizations, and Certifications**

<u>CERTIFICATIONS AND AUTHORIZATIONS</u>

I certify that:

- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.
- I will comply, whenever applicable, with the civil rights and other limitations in this form.
- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.
- To the extent feasible, I will purchase only American-made equipment and products.
- The Applicant is not engaged in any activity that is illegal under federal, state or local law.
- Any loan received by the Applicant under Section 7(b)(2) of the Small Business Act between January 31, 2020 and April 3, 2020 was for a purpose other than paying payroll costs and other allowable uses loans under the Paycheck Protection Program Rule.

For Applicants who are individuals:  I authorize the SBA to request criminal record information about me from criminal justice agencies for the purpose of determining my eligibility for programs authorized by the Small Business Act, as amended.

<u>CERTIFICATIONS</u>

The authorized representative of the Applicant must certify in good faith to all of the below by **initialing** next to each one:

_____   The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

_____   Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.

_____   The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

_____   The Applicant will provide to the Lender documentation verifying the number of full-time equivalent employees on the Applicant's payroll as well as the dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan.

_____   I understand that loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities, and not more than 25% of the forgiven amount may be for non-payroll costs.

_____   During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program.

_____   I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

_____   I acknowledge that the lender will confirm the eligible loan amount using required documents submitted. I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives, including authorized representatives of the SBA Office of Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews.

_____        _____
Signature of Authorized Representative of Applicant         Date

29.    To be eligible to receive money from the program, the business must make a good faith determination that "current economic uncertainty makes this loan necessary to support the ongoing operations of the Applicant."  This means that entities are only eligible for PPP loans where obtaining the money *through the PPP program is a necessity*.  As more fully explained by the Department of Treasury in its Frequently Asked Questions website related to the PPP program (available at https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf, last accessed June 25, 2020):

> 31. **Question:**  Do businesses owned by large companies with adequate sources of liquidity to support the business's ongoing operations qualify for a PPP loan?
>
> **Answer:**  In addition to reviewing applicable affiliation rules to determine eligibility, all borrowers must assess their economic need for a PPP loan under the standard established by the CARES Act and the PPP regulations at the time of the loan application.  Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary.  Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."  Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business.  For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification.
>
> Lenders may rely on a borrower's certification regarding the necessity of the loan request.  Any borrower that applied for a PPP loan prior to the issuance of this guidance and repays the loan in full by May 7, 2020 will be deemed by SBA to have made the required certification in good faith.[11]

Because this response was added on April 23, 2020, Treasury provided a safe harbor to businesses who received but did not *need* a PPP loan to repay those loans with no consequence if they did so by the deadline.  However, entities that did not repay their loan, but instead sought forgiveness under the PPP program, are not protected by the safe harbor.

30.    Significantly, the applicant is also required to identify whether "the

applicant or any owner of the Applicant [is] an owner of any other business, or have common management with any other business?" PPP borrower application Question 3. Any such business must be disclosed as part of the application.

31.    As explained in the FAQs, "[b]orrowers must apply the affiliation rules set forth in SBA's Interim Final Rule on Affiliation. A borrower must certify on the Borrower Application Form that the borrower is eligible to receive a PPP loan, and that certification means that the borrower is a small business concern as defined in section 3 of        the        Small        Business        Act."        (available        at https://home.treasury.gov/system/files/136/Paycheck-Protection-Program-Frequently-Asked-Questions.pdf, last accessed December 2, 2020).

32.    Skilled Nursing Facilities use North American Industry Classification System ("NAICS") code 623110. According to the Small Business Administration, SNFs are deemed to be small businesses if their total revenues, including affiliates, are $30,000,000.00 or less.

33.    In addition the applicant must state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP as well as to determine eligibility in the program. In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

34.    A business's PPP loan application is received and processed, in the first instance, by a participating financial institution, then transmitted, for further review, to the Small Business Administration ("SBA") to assess the applicant's eligibility. If a PPP loan application is approved, the participating financial institution funds the PPP loan directly.

35.    PPP loan proceeds must be used by the business on certain permissible expenses -- payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses a

1    minimum percentage of those funds on payroll expenses.

2        36.    Borrowers may apply for and receive forgiveness of the principal and

3    interest on their loans if they use the funds for certain qualifying business expenses.  In

4    order for a loan to be forgiven, subject to certain additional requirements, at least 60%

5    of the proceeds of the loan must be spent on payroll costs, while the remainder of the

6    forgiven amount must be spent on business mortgage interest payments, business rent

7    or lease payments, or business utility payments.

8        37.    In applying for forgiveness of a loan, borrowers again make certifications

9    and representations to the government that are material and binding. The certifications

10   made in the forgiveness application including the following:

**By Signing Below, You Make the Following Representations and Certifications on Behalf of the Borrower:**

The authorized representative of the Borrower certifies to all of the below by **initialing** next to each one.

____    The dollar amount for which forgiveness is requested:
- was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);
- includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;
- includes payroll costs equal to at least 60% of the forgiveness amount;
- if a 24-week Covered Period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual; and
- if the Borrower has elected an 8-week Covered Period, does not exceed 8 weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual.

____    I understand that if the funds were knowingly used for unauthorized purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges.

____    The Borrower has accurately verified the payments for the eligible payroll and nonpayroll costs for which the Borrower is requesting forgiveness.

## VI.    THE AGATHOS SUPPORT SERVICE, INC. DEFENDANTS DID NOT QUALIFY FOR THE LOANS

### A.    Agathos Support Service, Inc. and its Affiliates Far Exceed the 500-Employee Cap and the Revenue Benchmarks

25       38.    Agathos Support Service, Inc., located at 4333 Torrance Blvd, Torrance,

26   CA 90503, was formed in 2017.  Though it has fewer than ten direct employees, Agathos

27   Support Service, Inc. manages, operates, and exerts complete control over nine

28   healthcare service providers, and one healthcare management company, throughout

1  California, with hundreds of employees.  The chain employs a total of 1,403 employees

2  and had a combined 2019 revenue of $116,336,996, far exceeding the legal maximum.

3      39.    William Nelson, Chief Executive Officer of Agathos Support Service, Inc.,

4  is on the governing board of each of the affiliated healthcare facilities.

5      40.    Vicki Rollins, Director at Agathos Support Service, Inc., is on the

6  governing board of each of the affiliated healthcare facilities.

7      41.     The affiliated entities comprising the Agathos Support Service, Inc. chain

8  are as follows:

9      42.    **Century Villa Inc.,** which does business as Century Villa, is a Skilled

10 Nursing Facility ("SNF") located at 301 N. Centinela Ave., Inglewood, CA 90302. As

11 of December 31, 2019, it had 124 employees. It had revenues in 2019 of $9,759,237,

12 and a Total Net Worth of $2,599,539.

13     43.    **Torrance Care Center West Inc.,** which does business as Torrance Care

14 Center West, is a Skilled Nursing Facility ("SNF") located at 4333 Torrance Blvd.,

15 Torrance, CA 90503. As of December 31, 2019, it had 209 employees. It had revenues

16 in 2019 of $19,417,096, and a Total Net Worth of $13,140,738.

17     44.    **Long Beach Care Center Inc.,** which does business as Long Beach Care

18 Center, is a Skilled Nursing Facility ("SNF") located at 2615 Grande Ave., Long Beach,

19 CA 90815. As of December 31, 2019, it had 178 employees. It had revenues in 2019 of

20 $15,856,446, and a Total Net Worth of $10,001,324.

21     45.    **Flower Villa Inc.,** which does business as Flower Villa, is a Skilled

22 Nursing Facility ("SNF") located at 1480 La Cienega Blvd., Los Angeles, CA 90035.

23 As of December 31, 2019, it had 43 employees. It had revenues in 2019 of $3,679,786,

24 though its Total Net Worth at that time was reported as -$758,711.

25     46.    **Glendora Grand Inc.,** which does business as Glendora Grand, is a Skilled

26 Nursing Facility ("SNF") located at 805 Arrow Hwy, Glendora, CA 91740. As of

27 December 31, 2019, it had 362 employees. It had revenues in 2019 of $31,493,401, and

28 a Total Net Worth of $11,021,843.

47.     **Centinela Grand Inc.,** which does business as Centinela Grand, is a Skilled Nursing Facility ("SNF") located at 2225 N. Perris Blvd., Perris, CA 92571. As of December 31, 2019, it had 138 employees. It had revenues in 2019 of $9,008,624, though its Total Net Worth at that time was reported as 1,903,735.

48.     **Pacific Villa Inc.,** which does business as Pacific Villa, is a Skilled Nursing Facility ("SNF") located at 3501 Cedar Ave., Long Beach, CA 90807. As of December 31, 2019, it had 148 employees. It had revenues in 2019 of $10,759,450, though its Total Net Worth at that time was reported as -$273,751.

49.     **Villa Del Rio Center Inc.,** which does business as Del Rio Convalescent Center, is a Skilled Nursing Facility ("SNF") located at 7002 Gage Ave, Bell Gardens, CA 90201. As of December 31, 2019, it had 110 employees. It had revenues in 2019 of $8,681,964, though its Total Net Worth at that time was reported as -$3,094,241.

50.     **Villa Del Rio Gardens Inc.,** which does business as Del Rio Gardens Care Center, is a Skilled Nursing Facility ("SNF") located at 7004 E Gage Ave, Bell Gardens, CA 90201. As of December 31, 2019 it had 91 employees. It had revenues in 2019 of $7,681,992, and a Total Net Worth of $1,331,449.

51.     All of the above SNFs are 100% owned by Agathos Support Service, Inc. All of the above SNFs have overlapping Governing Boards, and all are operated under the management umbrella of Agathos Support Service.

52.     Additionally, Agathos Support Service, Inc. owns and operates healthcare management company, **RollinsNelson Grp, LLC,**  located at 805 W. Arrow Highway, Glendora CA, 91740. Though RollinsNelson is not an SNF, it is wholly owned by William Nelson and Vicki Rollins. RollinsNelson previously operated Agathos affiliate Torrance Care Center East, which was merged into Defendant Torrance Care Center West Inc. in 2014.

53.     Accordingly, per the SBA guidelines, all of these entities are "affiliates," and their *combined* revenues ($116,336,996) and employee-counts (1,403) were the appropriate measure for PPP qualification.  Had they done so, however, they would not

have qualified under any measure for the PPP program.  Knowing this, Defendants concealed their affiliated status, and applied for PPP loans based solely on their own, individual employee counts and revenue figures.

**B.**    **Agathos Support Service, Inc. and its Affiliates Submitted Fraudulent PPP Applications**

54.    On April 28, 2020, Century Villa received  $867,556.00 in PPP loans through City National Bank. Due to the total affiliated revenues and employee-counts, Century Villa, Inc. was not eligible for a PPP loan, and necessarily made several false certifications in order to obtain this loan.

55.    On April 29 2020, Torrance Care Center West received $1,727,282.00 in PPP loans through City National Bank. Due to the total affiliated revenues and employee-counts, Torrance Care Center West, Inc. was not eligible for a PPP loan, and necessarily made several false certifications in order to obtain this loan.

56.    On April 28, 2020, Long Beach Care Center received $1,631,556.00 in PPP loans through City National Bank. Due to the total affiliated revenues and employee-counts, Long Beach Care Center, Inc. was not eligible for a PPP loan, and necessarily made several false certifications in order to obtain this loan.

57.    On April 30, 2020, Flower Villa received $343,405.00 in PPP loans through City National Bank. Due to the total affiliated revenues and employee-counts, Flower Villa, Inc. was not eligible for a PPP loan, and necessarily made several false certifications in order to obtain this loan.

58.    On April 27, 2020, Glendora Grand received $2,866,108.00 in PPP loans through City National Bank. Due to the total affiliated revenues and employee-counts, Glendora Grand, Inc. was not eligible for a PPP loan, and necessarily made several false certifications in order to obtain this loan.

59.    On April 27, 2020, Centinela Grand received $1,013,886.00 in PPP loans through City National Bank. Due to the total affiliated revenues and employee-counts, Centinela Grand, Inc. was not eligible for a PPP loan, and necessarily made several false

1  certifications in order to obtain this loan.

2  60.   On April 28, 2020, Pacific Villa received $1,057,996.00 in PPP loans

3  through City National Bank. Due to the total affiliated revenues and employee-counts,

4  Pacific Villa, Inc. was not eligible for a PPP loan, and necessarily made several false

5  certifications in order to obtain this loan.

6  61.   On April 27, 2020, Del Rio Gardens Care Center received $1,663,419.00

7  in PPP loans through City National Bank. Due to the total affiliated revenues and

8  employee-counts, Villa Del Rio Gardens, Inc. was not eligible for a PPP loan, and

9  necessarily made several false certifications in order to obtain this loan.

10  62.   On April 30, 2020, Agathos Support Services, Inc. received $187,804.00 in

11  PPP loans through City National Bank. Due to the total affiliated revenues and

12  employee-counts, Agathos Support Services, Inc. was not eligible for a PPP loan, and

13  necessarily made several false certifications in order to obtain this loan.

14  **C.   The Agathos Support Service, Inc. Chain Had Significant Sources of**

15  **Financial Assistance, and Otherwise Were Not in Need of PPP Loans.**

16  63.   Defendants' PPP Loan applications were also fraudulent because

17  Defendants did not need financial assistance. To the contrary, Defendants received an

18  influx of revenues and other financial assistance as a result of the COVID-19 pandemic.

19  64.   Medicare patients in nursing homes have the highest reimbursement rates,

20  between $600 to $1,000 a day, several times higher than Medicaid (Medi-Cal)

21  reimbursement of approximately $200 a day. Nursing homes compete for Medicare

22  patients which are main source of profitability for this industry. Generally, nursing

23  homes may only admit Medicare patients after a hospital qualifying stay, meaning that

24  they had been in a hospital for three (3) days prior. In response to the COVID-19

25  pandemic, this three-day qualifying stay requirement was temporarily waived by the

26  Center for Medicare and Medicaid Services ("CMS") resulting in a flood of new and

27  profitable high reimbursement patients entering skilled nursing facilities across the

28  country.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**COMPLAINT**                                                                      13

65.    With the increase in patients due to the CMS waiver of qualifying stays, nursing homes throughout the country and California had to increase their staffing levels.  In a time where much of the nation was suffering, the nursing home business was growing and hiring more employees.

66.    Moreover, on March 28, 2020, CMS allowed for providers who bill under Medicare parts A and B to request a three-month advance of their Medicare payments, leading to an influx of cash in many health care facilities.

67.    Furthermore, California temporarily increased reimbursement for Medi-Cal patients by increasing the facility Medi-Cal rate by 10%.  70 to 80% of nursing home residents have Medi-Cal.  This resulted in additional significant profits to the bottom line, in some cases, millions of dollars.  Medi-Cal generally pays nursing homes within three weeks from billing, and most billing is electronic.  Accordingly, the increased cash flow to Defendants as a result of this temporary reimbursement boost was virtually instantaneous.

68.    Furthermore, on March 30, 2020, Governor Gavin Newsome announced the creation of the California Health Care Worker Surge Initiative, in which California eased licensing and other restrictions to increase the pool of potential health care workers given the vastly increased need.

69.    Due to these circumstances, though claiming PPP loans were necessary to ensure that they did not have to lay off workers, the Agathos Support Service, Inc. Defendants were never at risk of being unable to pay their staff.  Instead of potential payroll cuts, the healthcare providers listed were increasing their staffing levels in conjunction with the increasing need of medical care providers due to the COVID-19 pandemic.

70.    Worse still, several of the Defendants received an influx of cash/windfall from other federal agencies; making the PPP loans even less necessary.

71.    For example, on August 18, 2021, Century Villa received $972,328.00 in the form of a grant from the Department of Health and Human Services.

72.    On August 18, 2021, Torrance Care Center West received $1,871,409.00 in the form of a grant from the Department of Health and Human Services, and on December 9th 2020, received $1,800,000.00 in the form of a loan as part of the Medicare Advance Payment Program.

73.    On August 18, 2021, Long Beach Care Center received $1,387,289.00 in the form of a grant from the Department of Health and Human Services, and on December 9, 2020, received $1,200,000 in the form of a loan as part of the Medicare Advance Payment Program.

74.    On August 18, 2021, Centinela Grand received $951,092.00 in the form of a grant from the Department of Health and Human Services.

75.    On August 18, 2021, Pacific Villa received $1,003,378.000 in the form of a grant from the Department of Health and Human Services.

76.    Potential borrowers that were in need of these precious funds lost out on the opportunity to pay their workers and, in some cases, save their businesses from closing, because the funds were instead directed to the Agathos Support Service, Inc. Defendants.

77.    The Agathos Support Service, Inc. Defendants violated the False Claims Act by making false claims for funds through PPP loans, making false statements in support those applications and claims, retaining funds which they were required to return, using the proceeds of the loans for ineligible expenses despite promises to the contrary, and conspiring to obtain the PPP loans.

## VII.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Submission of a False Claim

### 31 U.S.C. § 3729(a)(1)(A)

78.    Relator realleges and incorporates by reference the allegations contained in all paragraphs of the Complaint as if fully set forth herein.

79.    This is a claim for treble damages and penalties under the False Claims Act,

1    31 U.S.C. § 3729, *et seq.*, as amended.

2         80.    By virtue of the acts described above, Defendants knowingly presented or

3    caused to be presented, false or fraudulent claims to the United States Government for

4    payment or approval.

5         81.    The Government, unaware of the falsity funded PPP loans to be paid to the

6    Agathos Support Service, Inc. Defendants that would not have been funded or paid but

7    for Defendants' illegal conduct.

8         82.    By reason of Defendants' acts, the United States has been damaged, and

9    continues to be damaged, in a substantial amount to be determined at trial.

10        83.    Additionally, the United States is entitled to the maximum penalty

11   permitted for each and every violation alleged herein.

12        84.    Wherefore, Relator prays for relief as set forth below.

13                         **SECOND CAUSE OF ACTION**

14              **Making False Statement in Support of a Claim**

15                    **31 U.S.C. § 3729(a)(1)(B)**

16        85.    Relator realleges and incorporates by reference the allegations contained in

17   all paragraphs of the Complaint as if fully set forth herein.

18        86.    This is a claim for treble damages and penalties under the False Claims Act,

19   31 U.S.C. § 3729, et seq., as amended.

20        87.    By virtue of the acts described above, Defendants knowingly made or used,

21   or caused to be made or used, false or fraudulent records or statements material to false

22   or fraudulent claims.

23        88.    The Government, unaware of the falsity funded PPP loans to be paid to the

24   Agathos Support Service, Inc. Defendants that would not have been funded or paid but

25   for Defendants' illegal conduct.

26        89.    By reason of Defendants' acts, the United States has been damaged, and

27   continues to be damaged, in a substantial amount to be determined at trial.

28        90.    Additionally, the United States is entitled to the maximum penalty

1  permitted for each and every violation alleged herein.

2  91.  Wherefore, Relator prays for relief as set forth below.

3  **THIRD CAUSE OF ACTION**

4  **Conspiracy to Violate the False Claims Act**

5  **31 U.S.C. § 3729(a)(1)(C)**

6  92.  Relator realleges and incorporates by reference the allegations contained in

7  all paragraphs of the Complaint as if fully set forth herein.

8  93.  This is a claim for treble damages and penalties under the False Claims Act,

9  31 U.S.C. § 3729, et seq., as amended.

10  94.  By virtue of the acts described above, Defendants, their agents, employees

11  and other co-conspirators knowingly conspired to submit false claims to the United

12  States, make or use false records or statements material to false or fraudulent claims, and

13  to conceal and fail to remit overpayments from the United States.

14  95.  The Government, unaware of the falsity funded PPP loans to be paid to the

15  Agathos Support Service, Inc. Defendants that would not have been funded or paid but

16  for Defendants' illegal conduct.

17  96.  By reason of Defendants' acts, the United States has been damaged, and

18  continues to be damaged, in a substantial amount to be determined at trial.

19  97.  Additionally, the United States is entitled to the maximum penalty

20  permitted for each and every violation alleged herein.

21  98.  Wherefore, Relator prays for relief as set forth below.

22  **FOURTH CAUSE OF ACTION**

23  **Improper Retention of Money Owed to the Government**

24  **31 U.S.C. § 3729(a)(1)(G)**

25  99.  Relator realleges and incorporates by reference the allegations contained in

26  all paragraphs of the Complaint as if fully set forth herein.

27  100.  This is a claim for treble damages and penalties under the False Claims Act,

28  31 U.S.C. § 3729, et seq., as amended.

101.   By virtue of the acts described above, Defendants knowingly concealed overpayments from the United States Government and failed to remit such overpayments.

102.   The Government, unaware of the falsity funded PPP loans to be paid to the Agathos Support Service, Inc. Defendants that would not have been funded or paid but for Defendants' illegal conduct.

103.   By reason of Defendants' acts, the United States has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

104.   Additionally, the United States is entitled to the maximum penalty permitted for each and every violation alleged herein.

105.   Wherefore, Relator prays for relief as set forth below.

## VIII.   **PRAYER FOR RELIEF**

WHEREFORE, Relator prays for judgment against the Defendants as follows:

1.   That this Court enter judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus the maximum civil penalty for each violation of 31 U.S.C. § 3729;

2.   That Relator be awarded the maximum amount allowed pursuant to § 3730(d) of the False Claims Act;

3.   That Relator be awarded all costs of this action, including attorneys' fees and expenses; and

4.   That Relator recover such other relief as the Court deems just and proper.

## IX.   **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable

Dated: April 26, 2022                    **COTCHETT, PITRE & McCARTHY, LLP**

By: _____
JUSTIN T. BERGER
THERESA E. VITALE

*Attorneys for Relator Ashwani Chawla*